UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
:
RICARDO CASTRO; JEFF JACKSON, :
:
Plaintiffs, :
: 17-CV-1205 (VSB)
- against - :
: **OPINION & ORDER**
:
AABC CONSTRUCTION, INC. *also known* :
*as* AABC PLUMBING; DANIEL SHEERI, :
:
Defendants. :
:
---------------------------------------------------------X

Appearances:

Christopher Roesch Neff
Chaim B. Book
Moskowitz & Book, LLP
New York, NY
*Counsel for Plaintiffs*

Daniel Sheeri
New York, NY
*Pro se Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me are Plaintiffs Ricardo Castro and Jeff Jackson's ("Plaintiffs") objections to Magistrate Judge Fox's January 17, 2020, Report and Recommendation ("R&R" or "Report") denying Plaintiffs' motion for summary judgment against pro se Defendant Daniel Sheeri ("Defendant"). (Doc. 76.) Because I agree with Magistrate Judge Fox's conclusion that a genuine issue of material fact exists regarding Defendant's status as Plaintiffs' "employer," I adopt the Report, and deny Plaintiffs' motion for summary judgment.

I.      **<u>Background</u>**

I assume the parties' familiarity with the factual background and procedural history in this case as described by Magistrate Judge Fox is his Report. Since the filing of the Report, Plaintiffs filed timely objections to the Report. (Doc. 76.) Plaintiffs' objections request a finding that they are entitled to summary judgment regarding: (i) Defendant's individual liability as Plaintiffs' employer; (ii) their Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") wage, hour, and overtime claims; (iii) Defendant's violations of the NYLL's wage notice, wage statement, and spread-of-hours provisions; and (iv) liquidated damages, attorneys' fees, and prejudgment interest on their claims. (*Id.*)

II.     **<u>Legal Standards</u>**

   A.   *Reviewing the Report and Recommendation*

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). When a party submits a timely objection, a district court reviews de novo the parts of the report and recommendation to which the party objected. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). With regard to a report and recommendation to which there is no objection, or portions of a report and recommendation to which there is no objection, a district court reviews a magistrate judge's findings for clear error. *See Braunstein v. Barber*, No. 06 Civ. 5978(CS)(GAY), 2009 WL 1542707, at *1 (S.D.N.Y. June 2, 2009) (explaining that a "district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent

2

from the face of the record"); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

B.  *Summary Judgment Standard*

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). A "dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256 (internal quotation marks omitted), and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Rather, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

### III. <u>Discussion</u>

Because Plaintiffs have timely and validly objected to Magistrate Judge Fox's Report, and specifically noted the grounds for their objections, I consider Plaintiffs' summary judgment arguments de novo.

### A. *Defendant's Rule 56.1 Statement*

As a threshold matter, I first overrule Plaintiffs' objections regarding Magistrate Judge Fox's reliance on Defendant's declaration. Plaintiff contends in its objections, and previously contended in its original reply papers, that Defendant's failure to comply with Local Rule 56.1 and Federal Rule of Civil Procedure 56.1(c) requires that I deem admitted the factual statements in Plaintiffs' Local Rule 56.1 statement. (Doc. 77, at 2; Doc. 74, at 2–3.) However, "[c]ourts afford pro se litigants greater latitude than represented parties." *Cobalt Multifamily Investors I, LLC v. Arden*, 857 F. Supp. 2d 349, 355 (S.D.N.Y. 2011) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest")). "This solicitude is particularly important in the summary judgment context, in which pro se litigants might be unaware of the deleterious effects of failing to respond adequately to a summary-judgment motion." *Id.* (citing *Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010)).

"Despite the deficiencies in [Defendant's] response, he has plainly made an effort to respond to the [Plaintiffs'] motion," and submitted a sworn declaration setting forth facts which "effectively highlight for the [Plaintiffs] and the Court those facts that [Defendant] believes to be in dispute." *F.T.C. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 302 (S.D.N.Y. 2008). Like other courts in this district, I will not construe Defendant's failures to comply with the technical requirements of Local Rule 56.1 as factual admissions; instead, I will "consider the totality of the parties' submissions in identifying disputed material facts, and will construe those disputed facts in [the non-movant's] favor as is appropriate on summary judgment." *Hamilton v. Bally of Switz.*, No. 03 Civ. 5685(GEL), 2005 WL 1162450, at *1 (S.D.N.Y. May 17, 2005); s*ee also Goldman v. Admin. for Children's Servs.*, No. 04 Civ. 7890(GEL), 2007 WL 1552397, at *1

n. 2 (S.D.N.Y. May 29, 2007) (considering the factual assertions made by pro se plaintiff in response to Rule 56.1 Statement, though plaintiff "did not submit any affidavits, and submitted only scant documentary evidence"); *Dove v. City of New York*, No. 03-CV-5052 JFB LB, 2007 WL 805786, at *1 n.3 (E.D.N.Y. Mar. 15, 2007) ("Although plaintiff did not respond to defendants' Rule 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and reads plaintiff's responses liberally as he is *pro se*, and considers factual assertions made by plaintiff in his submissions to the Court as contesting defendants' statement of material undisputed facts, where his statements or evidence conflict."); *Melendez v. DeVry Corp.*, No. 03-CV-1029 (NGG) LB, 2005 WL 3184277, at *1–2 (E.D.N.Y. Nov. 29, 2005) (declining to deem admitted all facts set forth in defendant's statement, where plaintiff was proceeding pro se). This conclusion is particularly appropriate here because, as noted by Magistrate Judge Fox, after Defendant filed his Rule 56.1 counter-statement and sworn declaration Plaintiffs did not move to strike any portion of Defendant's declaration under the sham affidavit rule, or supply additional record evidence to rebut Defendant's declaration. (R&R at 6.)

    **B.**  *Plaintiffs' Status as Employees Versus Independent Contractors*

      **1. Applicable Law**

  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). To "employ" someone under the statute means to "suffer or permit to work." *Id*. § 203(g). Recognizing the "broad coverage" required to accomplish the FLSA's goals, the Supreme Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citation omitted).

However, the FLSA's wage and overtime requirements do not apply to workers who are not employees, but independent contractors. *See Brock v. Superior Care, Inc*., 840 F.2d 1054 (2d Cir. 1988).

The Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp*., 537 F.3d 132, 141–142 (2d Cir. 2008). Courts generally determine whether an employer-employee relationship exists under the FLSA by assessing the "economic reality" of a particular employment situation. *Carter v. Dutchess Cmty. Coll*., 735 F.2d 8, 12 (2d Cir. 1984); *see also Barfield*, 537 F.3d at 141–142 (2d Cir. 2008). This economic reality test asks how much authority the "employer" exercised over the "employees." *Barfield*, 537 F.3d at 142. To determine whether an individual is an employee or an independent contractor under the FLSA, courts consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Hart v. Rick's Cabaret Int'l, Inc*., 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013) (quoting *Brock*, 840 F.2d at 1058–59. In the related subcontractor context, the Second Circuit has considered, among other factors, "whether [defendant's] premises and equipment were used for the plaintiffs' work; . . . the degree to which the [defendant] or [its] agents supervised plaintiffs' work; and . . . whether plaintiffs worked exclusively or predominantly for the [defendant]." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). No factor is dispositive; "rather, the test is based on a totality of the circumstances" analysis, with the ultimate question being whether the "workers depend upon someone else's business for the opportunity to render service or are in

business for themselves." *Brock*, 840 F.2d at 1059.

With respect to the NYLL, I note that neither the New York Court of Appeals nor the Second Circuit has decided whether "the tests for 'employer' status are the same under the FLSA and the NYLL." *Irizarry*, 722 F.3d at 117. But, "the New York Court of Appeals has articulated a standard for determining whether a worker is an employee or an independent contractor under the NYLL that is phrased differently than the FLSA inquiry," known as "the 'common law' test." *Hart*, 967 F. Supp. 2d at 923. "Although substantially similar to the FLSA, the common law focuses more on the degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Id.* (internal quotations and citation omitted). Specifically, the New York Court of Appeals has stated that "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 770 N.Y.S.2d 692, 694–695 (2003); *Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y.2010).[1] "Factors relevant to assessing control include whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog*, 770 N.Y.S.2d at 695; *Saleem v. Corporate Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 536 (S.D.N.Y. 2014), *order clarified*, No. 12-CV-8450 (JMF), 2014 WL 7106442 (S.D.N.Y. Dec. 9, 2014), *and aff'd*, 854 F.3d 131 (2d Cir. 2017).

---

[1] Although Plaintiffs cite New York's Construction Industry Fair Play Act presumption of employment, *see* N.Y. Labor Law § 861-c(1), in support of their argument that they were not independent contractors, I do not have occasion to consider or decide here whether New York's legislation affects the determination of Plaintiffs' status under the FLSA or NYLL, nor have Plaintiffs supplied me with authority stating that the Fair Play Act's tests control in this context.

### 2. Discussion

Under both the Second Circuit's economic reality test and New York's common law control test, a genuine dispute of material fact exists as to whether Plaintiffs were employees of Defendant, or just independent contractors exempt from the FLSA and NYLL's provisions. Various portions of the depositions submitted by Plaintiff, as well as the factual averments made by Defendant in his declaration, support this conclusion. Accordingly, I cannot conclude as a matter of law that Defendant was Plaintiffs' employer.

Although the parties agree that Plaintiffs' plumbing services were an integral part of AABC Construction Inc.'s ("AABC") business—indeed its entire business—the factual record contains evidence that, if credited by a jury, would support the conclusion that Plaintiffs exercised a potentially high degree of control over their work, had opportunity for both profit and loss, utilized independent initiative and skill, and did not have a permanent working relationship with Defendant. For example, the parties agree that AABC had a contractor's license, but no plumbing license, and relied exclusively on individuals like Plaintiffs to provide services requiring a plumbing license. During the deposition of Cynthia Hernandez—Defendant's secretary—Hernandez stated that Defendant did not "go out to the job sites" with Plaintiffs, (Hernandez Dep. at 21:13-15)[2], and "nobody" "supervise[d] the work of the plumbers at AABC," (*id.* at 37:8-10). She further stated that for many of the jobs brought in from private clients, Plaintiffs were "the one[s] that set[] the price . . . and talk[ed] to the client[s]." (*Id.* at 21:21-25.) For other jobs from larger building management clients, although Defendant set final job prices, Defendant did so only after consulting with a plumber on the job site, and relied on

---

[2] "Hernandez Dep." refers to the deposition transcript of Cynthia Hernandez, submitted as Exhibit 5 to the Affidavit of Christopher Neff. (Doc. 63-5.)

Plaintiffs' expertise and know-how in quoting such jobs. (*Id.* at 21:25–22:17.) On this same subject, Defendant agreed at his deposition that he "relied on [Plaintiffs] to an extent because they were physically present and could see the problem and, therefore, perhaps knew more about the problem than [he] did." (Sheeri Dep. at 81:3-22.)[3] It is undisputed that Plaintiffs were paid 25% of the net profits of any jobs they completed, and were not paid hourly or salaried.

Additionally, Defendant stated in his declaration that Plaintiffs only worked "on-call" assignments, and "only provided services if and when needed." (Sheeri Decl. ¶¶ 4–5.)[4] "If there was no job or assignment, the Plaintiffs were not required to be at any worksite," and "were free to use their time for personal use, or work another job." (*Id.*) Defendant's statements are corroborated by Hernandez's deposition testimony. Hernandez stated at her deposition that AABC is an "emergency service company" which "sometimes [gets] called, [and] sometimes [doesn't] get called," (Hernandez Dep. at 11:4-6); accordingly, Plaintiffs "didn't have any hours [and] work[ed] by the job." (*Id.* at 27:22-25.) Plaintiffs also were not scheduled in advance for jobs, but were called "on a job-by-job basis," (*id.* at 31:22-25), and did not wait in the office all day for calls, but were "[o]ut on their own" until a call came in, (*id.* at 28:3-5). Occasionally, Hernandez stated, Plaintiffs refused to go on jobs, (*id.* at 47:18-25), but also notified Defendant in advance of scheduled conflicts, (*id.* at 117:16-23). Defendant testified at his deposition that the only case in which he would not excuse a Plaintiff from a job was if the Plaintiff left work to be finished and did not complete a job, otherwise, Plaintiffs did not need to accept jobs. (Sheeri Dep. at 100:3-14.) Defendant further stated that Plaintiffs were free to take on other jobs and

---

[3] "Sheeri Dep." refers to the deposition transcript of Daniel Sheeri, submitted as Exhibit 6 to the Affidavit of Christopher Neff. (Doc. 63-6.)

[4] "Sheeri Decl." refers to the Declaration of Daniel Sheeri in opposition to Plaintiffs' motion for summary judgment, filed October 30, 2019. (Doc. 70.)

10

that they did take other jobs from non-AABC clients. (*Id.* at 62:9-21.) When asked how he would have felt if Plaintiffs were taking jobs from another plumbing company, Defendant stated "I was okay with that." (*Id.* at 105:5-8.) In other words, there is evidence in the record that Plaintiffs could work for entities that were arguably competitors of AABC.

Because Plaintiffs were paid 25% of net profits from any job they worked, were involved in pricing jobs, and could take other work outside of AABC, the evidence could support the conclusion that Plaintiffs shared in the profit and loss associated with their work. The evidence suggests that Plaintiffs had full control over how they completed jobs, and employed their own expertise when carrying out their work. Indeed, Defendant did not have the requisite plumbing credentials to take many of the jobs Plaintiffs worked, and relied on Plaintiffs' independent initiative and skill. The evidence also demonstrates an issue of material fact as to whether Plaintiffs worked regular hours and had a permanent working relationship with Defendant. Despite Plaintiffs' submissions to the contrary, the record does not support a ruling as a matter of law that Plaintiffs were Defendant's employees. *See e.g.*, *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 607 (E.D.N.Y. 2012) ("[T]hat the Plaintiffs were required to wear uniforms; put logos on their vehicles; remain in frequent contact with the Defendants; and attend monthly meetings—these are not dispositive and do not weigh against a finding of independent contractor status as a matter of law."); *In re Hertz Corp.*, 778 N.Y.S.2d 733, 744 (2004) (stating that "[i]ncidental control over the results produced—without further evidence of control over the means employed to achieve the results—will not constitute substantial evidence of an employer-employee relationship."). Instead, the factual disputes presented in this case will require a factfinder to the weigh the evidence and make credibility determinations, tasks which I must avoid on a motion for summary judgment. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 122 (2d Cir. 2004) (stating that the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments" (internal quotation marks omitted)).

IV. **Conclusion**

Because I agree with Magistrate Judge Fox's conclusion that a genuine issue of material fact exists regarding Defendant's status as Plaintiffs' "employer," I overrule Plaintiffs' objections and ADOPT the Report. Plaintiffs' motion for summary judgment is accordingly DENIED. The parties are directed to meet and confer, and file a joint letter no later than thirty (30) days after entry of this Opinion & Order, proposing dates for the filing of pre-trial submissions in accordance with my Individual Rule 6.

The Clerk is respectfully directed to terminate the open motion at Document 62, and Plaintiffs are directed to mail a copy of this Opinion & Order to the pro se Defendant and docket proof of the mailing.

SO ORDERED.

Dated: April 9, 2020
    New York, New York

Vernon S. Broderick
United States District Judge